IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

QUINTON LEE BRACKEN,

        Plaintiff,                        No. 6:20-cv-02183-AA

     v.                                **OPINION & ORDER**

DOUGLAS COUNTY; TRAVIS
WHETZEL,

        Defendants.

_____

AIKEN, District Judge.

This case comes before the Court on Defendants' Motion for Summary Judgment. ECF No. 34. A Summary Judgment Advice Notice was sent to *pro se* Plaintiff Quinton Lee Bracken advising him of the need to respond to the motion and the date when such a response would be due. ECF No. 37. Plaintiff did not respond to the motion and the time for doing so has passed. The Court concludes that this matter is appropriate for resolution without oral argument and the motion for summary judgment is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a).  Substantive law on an issue determines the materiality of a fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

Defendant Travis Whetzel is a deputy of the Douglas County Sheriff's Office and was serving as a patrol deputy during the relevant period.  Whetzel Decl. ¶ 1. ECF No. 36.

Plaintiff Quinton Lee Bracken is a resident of Douglas County, Oregon.  Compl. ¶ 6.  ECF No. 1.

## I.    The Events of December 22, 2018

Shortly after 1:00 a.m. on December 22, 2018, Whetzel was on patrol when he was directed by dispatch to deal with a dog barking inside of a motorhome in Canyonville, Oregon.  Whetzel Decl. ¶ 4.  Whetzel was familiar with the owner of the motorhome but was unable to locate her nearby.  *Id.*  Given the late hour, the only business open in the area was a bar called the "Point 9".  *Id.*  Whetzel made his way to the Point 9 to see if the owner of the motorhome might be found there.  *Id.*

At the relevant time, Plaintiff was the owner of the Point 9.  Compl. ¶ 11.  When Whetzel entered the Point 9, he was confronted by Plaintiff.  Whetzel Decl. ¶ 5. Whetzel asked if the owner of the motorhome was in the bar and Plaintiff answered that she was not before demanding to know what Whetzel was doing at the Point 9. *Id.*  Whetzel observed that Plaintiff was visibly intoxicated, with bloodshot eyes, slurred speech, and a sway when he spoke to Whetzel.  *Id.*  Plaintiff told Whetzel "Dispatch told me that you are not allowed in here, so what can I help you with?"  *Id.*

At this point, Whetzel activated his body camera and asked Plaintiff why he was questioning Whetzel about his presence when Whetzel had already explained that he was looking for the owner of the motorhome.  Whetzel Decl. ¶ 5.  Plaintiff responded "Why did you ask why the fuck Quinton Bracken was here?"  *Id.*  This response made no sense to Whetzel and served to confirm that Plaintiff was intoxicated.  *Id.*  Plaintiff continued "Anyway . . . done."  *Id.*  Whetzel asked if Plaintiff meant that Whetzel was done with his business at the bar and needed to leave.  *Id.* Plaintiff responded "I am, I am, I am no, I'm not, I'm not."  *Id.*

Whetzel told Plaintiff that he believed Plaintiff was intoxicated and exercising control over the bar, which was a violation of OLCC regulations. Whetzel Decl. ¶ 6. Whetzel told Plaintiff and the bartender that the bar was going to be shut down. *Id.* Plaintiff argued that Whetzel did not have the authority to shut down the bar. *Id.* Whetzel ordered the bartender to pull the drinks from the remaining customers and radioed dispatch to send a second deputy to assist with investigating the OLCC violation and issuing citations. *Id.* Whetzel told dispatch that the matter was not an emergency. *Id.*

Plaintiff continued to argue with Whetzel about Whetzel's authority and whether Whetzel was allowed in the bar. Whetzel Decl. ¶ 7. Plaintiff told Whetzel that he was going to call the sheriff in the morning and then began to walk towards the exit. *Id.* Whetzel told Plaintiff to remain in the bar because Whetzel was going to issue him a citation. *Id.* Plaintiff refused to remain and continued walking towards the exit. *Id.* Whetzel repeatedly told Plaintiff that he was not free to leave. *Id.* Plaintiff opened the exit door and told Whetzel that he was going home. *Id.* Whetzel told Plaintiff to come back to the bar and Plaintiff answered "no." *Id.*

Whetzel told Plaintiff that he was under arrest and reached for Plaintiff's arm. Whetzel Decl. ¶ 8. Plaintiff pulled his arm away and then grabbed Whetzel's arm. *Id.* Plaintiff continued to argue and resist being handcuffed as Whetzel told Plaintiff to place his arms behind his back. *Id.* A struggle ensued in which Whetzel pushed Plaintiff against the wall and warned that if he did not put his arms behind his back,

Whetzel would take him to the floor. *Id.* Plaintiff continued to struggle with Whetzel and so Whetzel took Plaintiff to the floor. *Id.*

Plaintiff continued to struggle with Whetzel on the floor, telling Whetzel that he was handicapped and to "get off" him. Whetzel Decl. ¶ 9. Whetzel affirms that no part of his body was on Plaintiff except for his hands. *Id.* Whetzel radioed dispatch that he was fighting with Plaintiff. *Id.* Whetzel searched Plaintiff and found a pocket knife, which Whetzel tossed aside. *Id.* An intoxicated bar patron picked up the knife and refused orders to put it back down. *Id.*

Plaintiff was laying on his side and continued to refuse instructions to roll on to his stomach, repeating that he was handicapped. Whetzel Decl. ¶ 10. Whetzel was eventually able to roll Plaintiff on to his stomach and get his arms behind his back and into handcuffs. *Id.* Whetzel searched Plaintiff and found a pair of brass knuckles in Plaintiff's pocket, which Whetzel knew were illegal to conceal. *Id.* Whetzel escorted Plaintiff to the patrol car, during which time he complained to Whetzel that he had an injured back, saying "I've got 5 ruptured and 3 disk." *Id.*

Whetzel transported Plaintiff to the Douglas County Jail and lodged him on charges of interfering with a peace officer, disorderly conduct, resisting arrest, and carrying a concealed weapon. Whetzel Decl. ¶ 11.

## II.    Plaintiff's Criminal Charges

Plaintiff was charged with Resisting Arrest in violation of ORS 162.315 and with Interfering with a Peace Officer in violation of ORS 162.247 in Douglas County

Circuit Court Case No. 19CR72547.  A jury trial was held on the charges and Whetzel

testified before the jury on July 9, 2021.  Whetzel Decl. ¶ 12.

> In the criminal trial, the jury received the following instruction:

> Quinton Lee Bracken has raised the defense of self-defense to the charge
> of resisting arrest.

> If Quinton Lee Bracken reasonably believed that the officer[s] arresting
> him used more physical force than was necessary to make an arrest,
> then Quinton Lee Bracken was entitled to use physical force in self-
> defense.  In defending, Quinton Lee Bracken was entitled to use only
> that degree of physical force that he reasonably believed to be necessary
> to defend himself against what he believed to be the excessive force.

> The burden of proof is on the state to prove beyond a reasonable doubt
> that this defense does not apply.

Montoya Decl. Ex. 1, at 9.  ECF No. 35.

The jury rejected Plaintiff's claim of self defense and Plaintiff was convicted of

Resisting Arrest and Interfering with a Peace Officer on July 9, 2021.  Montoya Decl.

Ex. 2.  On the same day, Plaintiff was sentenced to ten days in jail for Resisting Arrest

and five days in jail for Interfering with a Peace Officer.  Montoya Decl. Ex. 3.

Plaintiff filed an appeal of his conviction.  Montoya Decl. Ex. 4.

Plaintiff filed this case on December 15, 2020.  ECF No. 1.  The case was stayed

on Plaintiff's motion pending resolution of the criminal charges against Plaintiff.

ECF Nos. 15, 16.  As set forth above, the criminal charges were resolved with

Plaintiff's conviction.  On August 24, 2022, the stay was lifted on Defendant's motion

and over Plaintiff's objections.  ECF No. 27.  On September 16, 2022, Plaintiff's

counsel withdrew and Plaintiff has continued *pro se.*  ECF No. 32.

## DISCUSSION

Plaintiff brings claims for (1) violation of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; (2) Oregon state law claims for assault and battery; (3) intentional infliction of emotional distress ("IIED"); (4) negligence; (5) malicious prosecution pursuant to 42 U.S.C. § 1983; and (6) an Oregon state claw claim for malicious prosecution.  Defendants move for summary judgment as to all claims.  As noted, Plaintiff has not responded to Defendants' motion.

### I.    42 U.S.C. § 1983

Plaintiff alleges that Defendants violated his constitutional rights (1) not to be deprived of liberty without due process of law and "specifically to not be detained, arrested, and taken in to custody without supporting probable cause,"; (2) the right to be free from the use of excessive and unreasonable force; (3) the right to be free from prosecution instituted in violation of procedural and substantive due process and without factual basis supporting probable cause; and (4) the right to be "free from summary punishment." Compl. ¶ 53.  Plaintiff further alleges that Douglas County is liable under § 1983 for its alleged policy, custom or practice of permitting law enforcement officers to violate policies; fail to properly implement the law; use unreasonable and unlawful force; and violate the rights of citizens.  *Id.* at ¶ 54. Plaintiff alleges that Douglas County failed to properly train and supervise Whetzel. *Id.*  The Court will address each claim in turn, with the claim concerning malicious prosecution discussed in a separate section below.

Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

First, the Court must address Plaintiff's claims that his arrest and prosecution were done in violation of his due process rights, as well the somewhat confusing claim that Plaintiff was subject to "summary punishment." Defendants assert that all three claims are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a court must dismiss a § 1983 claim if (1) it seeks to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" and (2) the plaintiff cannot show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. "Accordingly, a civil damages claim that undermines a valid, underlying conviction or sentence is not cognizable under § 1983." *Washington v. Los Angeles Cnty. Sheriff's Dept.*, 833 F.3d 1048, 1055 (9th Cir. 2016) (internal quotation marks and citation omitted). The Ninth Circuit has held that, when the plaintiff has been convicted, there "is no question" that *Heck* will bar a claim that a police defendant lacked probable cause to arrest a plaintiff or a claim of unfounded criminal

charges brought against the plaintiff. *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

Here, Plaintiff was convicted by an Oregon circuit court of Resisting Arrest and Interfering with a Peace Officer and, on this record, those conviction remain standing. Under the *Heck* doctrine, those convictions will bar Plaintiff's due process claims related to his arrest and conviction, as well as his claim that he was subjected "summary punishment."

Turning to Plaintiff's claim for excessive force, "an allegation of excessive force by a police officer would not be barred by *Heck* if it were distinct temporally or spatially from the factual basis of the person's conviction." *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012). In *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005), the Ninth Circuit held that the plaintiff, who pleaded guilty to resisting arrest was not barred from pursuing an excessive force claim pursuant to § 1983 "because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction." 394 F.3d at 693. The *Smith* plaintiff's § 1983 action "neither demonstrates nor necessarily implies the invalidity of his conviction." *Id.*

Thus, the question is whether it is reasonable to infer that plaintiff's conviction and his excessive force claims are "based on different actions." *Kyles v. Baker*, 72 F. Supp.3d 1021, 1037 (N.D. Cal. 2014) (citing *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (holding that a conviction for resisting arrest under California Penal Code § 148(a)(1) does not "bar a § 1983 claim for excessive force

under *Heck* if the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'")); *see also Sharif v. Rankin*, No. 6:21-cv-0031-HZ, 2022 WL 2440049, at *3 (D. Or. July 5, 2022) ("In the excessive force context, if the allegedly unconstitutional force was used in response to the same conduct upon which Plaintiff's convictions are based, then the claim is barred.  But if the alleged excessive force was not precipitated by conduct for which the plaintiff was convicted of a crime, the § 1983 claim may proceed." (internal quotation marks and citations omitted)).

Here, the allegedly excessive force and the events giving rise to Plaintiff's conviction for resisting arrest are one and the same.  In addition, the Court's inquiry is simplified considerably because, in reaching its decision on the charges against Plaintiff, the jury was directly required to consider the reasonableness of the force used by Whetzel.  During his criminal trial, Plaintiff asserted self-defense as a defense to the charge of resisting arrest.  As consequence, the jury was instructed to consider whether Plaintiff "reasonably believed that the officer[s] arresting him used more physical force than was necessary to make the arrest," which would have allowed Plaintiff to use "that degree of physical force that he reasonably believed to be necessary to defend himself against what he believed to be excessive force." Montoya Decl. Ex. 1, at 9.  In convicting Plaintiff of resisting arrest, the jury rejected the conclusion that Whetzel used excessive force in his arrest of Plaintiff.

Because the Court concludes that Whetzel did not violate Plaintiff's constitutional rights, it is not necessary for the Court to reach the question of qualified immunity raised by Defendants in their motion.

In addition, the failure of Plaintiff's § 1983 claims against Whetzel is also fatal to Plaintiff's claims against Douglas County.  A claim for municipal liability under *Monell v. New York Dept. Soc. Servs.*, 436 U.S. 658 (1978) is contingent on the violation of constitutional rights and a municipal defendant cannot be held liable if there is no constitutional violation.  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).  As discussed above, Plaintiff cannot establish that Whetzel violated his constitutional rights and so no *Monell* liability may attach as to Douglas County.

## II.    Assault and Battery

Under Oregon law, a "peace officer may use physical force upon another person" when it is "objectively reasonable, under the totality of circumstances known to the peace officer, to believe . . . That the use of physical force is necessary to: [m]ake a lawful arrest when the peace officer has probable cause to believe the person has committed a crime."  ORS 161.233(1)(b)(A).  There is a privilege under Oregon law that protects police officers from liability for assault and battery when "the physical violence exerted by the officers against plaintiff was no more than necessary to accomplish the legitimate purpose of fulfilling their duty."  *Gigler v. City of Kalamth Falls*, 21 Or. App. 753, 763 (1975); *see also Hadley v. City of Beaverton*, No. CV-09-022-ST, 2010 WL 1257609, at *15 (D. Or. Feb. 16, 2010) (claims for assault and battery against police were contingent upon the lawfulness of the arrest).

Here, as discussed above, Plaintiffs arrest was lawful and supported by probable cause, and was not accompanied by excessive force as evidenced by Plaintiff's subsequent conviction. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claims for assault and battery.

### III.    IIED

To establish an IIED claim, a plaintiff must prove: "(1) that defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) that defendants engaged in outrageous conduct, *i.e.*, conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) that defendants' conduct in fact caused plaintiff severe emotional distress." *House v. Hicks*, 218 Or. App. 348, 357-58 (2008). "A trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability." *Id.* at 358. Conduct that is merely "rude, boorish, tyrannical, churlish and mean does not satisfy that standard, . . . nor do insults, harsh or intimidating words, or rude behavior ordinarily result in liability even when intended to cause distress." *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or. App. 234, 239 (1992) (internal quotation marks and citation omitted, alterations normalized). Put another way, the conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Christofferson v. Church of Scientology*, 57 Or. App. 203, 211 n.7 (1982).

Here, even viewed in the light most favorable to Plaintiff, Defendants conduct falls short of the threshold necessary to establish a claim for intentional infliction of emotional distress.

## IV.    Negligence

In his claim for negligence, Plaintiff alleges that Defendants "owed Plaintiff a duty to use due care at or about the time of the aforementioned incidents," and "[i]n committing the aforementioned acts and/or omissions, defendants, each of them, negligently breached said duty to use due care," and directly and proximately caused the injuries and damages to Plaintiff.

As discussed above, the "aforementioned acts" are Plaintiff's lawful arrest, prosecution, and conviction for criminal offenses.  Plaintiff has failed to respond to Defendants' motion for summary judgment and so offers no argument or explanation in support of this claim.  The Court concludes that, on this record, Defendants are entitled to summary judgment on Plaintiff's claim for negligence.

## V.    Malicious Prosecution

Plaintiff brings claims for malicious prosecution under both § 1983 and Oregon state law.

In the context of § 1983, a claim for malicious prosecution is not generally available if there is an adequate remedy within the state system.  *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985).  As an exception to this general rule, a plaintiff may maintain a § 1983 claim when "a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to

subject a person to a denial of constitutional rights." *Id.*; *Usher v. City of Los Angeles*, 828 F.2d 556, 561-62 (9th Cir. 1987). Assuming the claim falls within the exception, a plaintiff alleging malicious prosecution under § 1983 must establish (1) the elements of the state law tort, and (2) an intent to deprive the plaintiff of a constitutional right. *Westwood v. City of Hermiston*, 787 F. Supp.2d 1174, 1205 (D. Or. 2011).

To sustain a claim for malicious prosecution in Oregon, a plaintiff must plead and prove (1) the commencement and prosecution by a defendant of a judicial proceeding against the plaintiff; (2) the termination of the proceeding in the plaintiff's favor; (3) the absence of probable cause to prosecute the action; (4) the existence of malice, or a primary purpose other than to secure the adjudication of the claim; and (5) damages. *Mantia v. Hanson*, 190 Or. App. 412, 419-20 (2003); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) (for a federal claim, "An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence.").

Here, Plaintiff cannot sustain a state law claim for malicious prosecution because the underlying criminal proceeding was not terminated in Plaintiff's favor. Rather, he was convicted following a jury trial. Plaintiff's federal claim for malicious prosecution must likewise fail. Defendants are entitled to summary judgment as to Plaintiff's federal and state law claims for malicious prosecution.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, ECF No. 34, is GRANTED and this case is DISMISSED.  Final judgment shall be entered accordingly.

It is so ORDERED and DATED this  1st  day of August 2023

                      /s/Ann Aiken
                      ANN AIKEN
                      United States District Judge